IN THE SUPREME COURT OF NORTH CAROLINA

 2021-NCSC-16

 No. 385PA19

 Filed 12 March 2021

 RALEIGH HOUSING AUTHORITY

 v.
 PATRICIA WINSTON

 On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision

 of the Court of Appeals, 267 N.C. App. 419 (2019), affirming an order entered on

 26 June 2018 by Judge Michael Denning in District Court, Wake County. Heard in

 the Supreme Court on 12 January 2021.

 The Francis Law Firm, PLLC, by Ruth Sheehan and Charles T. Francis and
 Alan D. Woodlief, Jr., for plaintiff-appellee.

 Robinson, Bradshaw & Hinson, P.A., by Erik R. Zimmerman and Ethan R.
 White; and Legal Aid of North Carolina, Inc., by Andrew Cogdell, Celia Pistolis,
 Darren Chester, Daniel J. Dore, and Thomas Holderness, for defendant-
 appellant.

 Jack Holtzman, Emily Turner, Elizabeth Myerholtz, Lisa Grafstein, and Lisa
 Nesbitt for Disability Rights North Carolina, North Carolina Justice Center,
 North Carolina Housing Coalition, North Carolina Coalition to End
 Homelessness, North Carolina Coalition Against Domestic Violence, amici
 curiae.

 BARRINGER, Justice.

¶1 This case presents us with the question of whether a notice of lease termination

 provided to a tenant of public housing “state[d] specific grounds for termination.” 24
 RALEIGH HOUS. AUTH. V WINSTON

 2021-NCSC-16

 Opinion of the Court

 C.F.R. § 966.4(l)(3)(ii) (2019).1 Plaintiff Raleigh Housing Authority (RHA) provided a

 notice of lease termination to defendant Patricia Winston (Winston) that notified her

 of RHA’s intent to terminate her lease due to “Inappropriate Conduct – Multiple

 Complaints” and quoted provision 9(F) of the lease agreement. Because the notice of

 lease termination failed to provide Winston with the factors necessary for her to be

 on notice of RHA’s justification for the termination of her lease on this record, we

 reverse the decision of the Court of Appeals.

 I. Background

¶2 RHA filed a complaint in summary ejectment against Winston on

 13 April 2018 in District Court, Wake County. RHA’s complaint alleged that the lease

 period had ended, and Winston was holding over after the end of the lease. In her

 answer, Winston denied these allegations and raised as a defense that the notice of

 lease termination “d[id] not state with specificity defendant’s alleged ‘Inappropriate

 Conduct’ ” and “violates federal lease notice requirements” citing 24 C.F.R.

 § 966.4(l)(3)(ii). The lease agreement between Winston and RHA stated that “[t]he

 notice of termination to the Resident shall state reason(s) for the termination.”

 Following a summary ejectment trial in April 2018 and a hearing on RHA’s motion

 1 While Winston cites court decisions from other jurisdictions addressing other
 regulations under Title 24, “Housing and Urban Development,” Winston has not argued that
 any regulation addressing written notice applies other than 24 C.F.R. § 966.4(l)(3)(ii) (2019).
 RALEIGH HOUS. AUTH. V WINSTON

 2021-NCSC-16

 Opinion of the Court

for eviction on 25 June 2018,2 the trial court entered an order allowing immediate

possession of the apartment to RHA. In the order allowing immediate possession, the

trial court made the following findings of fact:3

 3. On April 17, 2017 [t]he Defendant entered into a
 renewable twelve-month lease (“Lease”) with the Plaintiff
 for a one-bedroom apartment (Apartment #206) at 150 Gas
 Light Creek Court, Raleigh, N.C. 27601.

 4. Between October 2017 and November 2017, Plaintiff
 received three (3) written complaints from other tenants in
 the apartment complex about noise disturbances coming
 from Defendant’s apartment[.]

 5. After the first written complaint[,] Plaintiff issued
 the Defendant a written warning indicating to the
 Defendant that a complaint had been filed against her for
 noise disturbance.

 6. On or about December 1, 2017, after receiving a
 third written complaint from a tenant in the apartment
 complex, Plaintiff sent a letter to Defendant indicating that
 her lease would be terminated on December 31, 2017 as a
 result of violating Paragraph 9(f) of the Lease.

 7. Violating Paragraph 9(f) is a material breach of the
 Lease.

 8. After issuing the lease termination notice, Plaintiff
 had an informal meeting with the Defendant to discuss
 why her lease was being terminated.

 2 The trial court’s order allowing immediate possession indicates that the trial court

is addressing RHA’s motion for eviction. However, the trial court stated at the hearing that
the trial court was hearing an appeal of a summary ejectment.
 3 Winston has not challenged any of the trial court’s findings of fact on appeal to this

Court. The trial court’s findings of fact are therefore binding on appeal. See, e.g., Mussa v.
Palmer-Mussa, 366 N.C. 185, 191 (2012).
 RALEIGH HOUS. AUTH. V WINSTON

 2021-NCSC-16

 Opinion of the Court

9. Plaintiff rescinded the lease termination letter after
the informal meeting, as the Defendant made the Plaintiff
aware that Defendant had been a victim of domestic
violence.

10. The [c]ourt takes judicial notice of the North
Carolina Court Information System Electronic-Filing for
Domestic violence complaints and notes that on December
5th, 2017, after RHA had hand delivered and sent via
Certified mail return receipt requested the first notice of
Lease Termination to the Defendant, Defendant file[d] for
an Ex-Parte Domestic Violence Protective Order (DVPO)
against [another individual].

11. Defendant’s request for an Ex-Parte DVPO was
DENIED on December 5th, 2017, and, notable her reasons
for requesting the order were:

 He deserve [sic] my neighbor my landlord was
 going to put me out because she didn’t want
 here and I didn’t want he there but if he keep
 coming I we have to leave.

12. Defendant did not obtain a DVPO against [the other
individual] until the return hearing on December 18th, at
that hearing [the other individual] was not present and the
Defendant’s allegations had changed substantially:

 defendant repeatedly screams profanity at
 plaintiff and threatens to assault her;
 repeatedly verbal abuse for 17 years has
 caused her substantial emotional distress[.]

13. At the time of the first warning Defendant indicated
to Plaintiff that she intended to get a no trespass order
against [the other individual].

14. On or about February 5, 2018, the Plaintiff received
another noise complaint against the Defendant.
 RALEIGH HOUS. AUTH. V WINSTON

 2021-NCSC-16

 Opinion of the Court

 15. On or about February 13, 2018, the Plaintiff issued
 a second notice of lease termination to the [Defendant].

 16. On or about February 17, 2018, the Defendant wrote
 a memo to the Plaintiff acknowledging the noise
 disturbances and alleging that the disturbances were a
 result of [the other individual’s] three friends.

 17. Just after receiving the 2nd notice to terminate her
 lease, Defendant sent a letter to the RHA indicating she
 intended to get a no trespass order for the other three
 friends of [the other individual]. Defendant has neither
 received a no trespass order for any of the individuals nor
 has she made any affirmative efforts to do so.

 18. Per the Defendant’s rights, she had a grievance
 hearing on or about March 6, 2018 with an independent
 third party. The grievance hearing affirmed the Plaintiff’s
 decision to terminate the Defendant’s lease.

¶3 From these facts, the trial court concluded that “[d]efendant has . . . been given

 adequate notice of her violations of Paragraph 9(f) of the Lease.”

¶4 The Court of Appeals concluded that the trial court did not err by reaching this

 conclusion. Raleigh Hous. Auth. v. Winston, 267 N.C. App. 419, 424 (2019). The Court

 of Appeals held that “the Notice of Lease Termination to Defendant was in compliance

 with the governing federal regulation” because it “identified—and quoted—the

 specific provision serving as the basis for Defendant’s lease termination.” Id.

¶5 Winston sought discretionary review in this Court, asking this Court to

 consider “[w]hether a reference to a provision of a lease alone satisfies a public

 housing authority’s obligation under federal law to ‘state specific grounds’ for

 terminating the lease.” Winston also sought discretionary review concerning the
 RALEIGH HOUS. AUTH. V WINSTON

 2021-NCSC-16

 Opinion of the Court

 business records exception to hearsay. This Court allowed the petition for

 discretionary review on both issues presented. We reverse the decision of the Court

 of Appeals on the first issue presented and remand to the trial court for dismissal.

 Accordingly, we decline to address the evidentiary issue concerning the business

 records exception and express no opinion concerning the manner in which the Court

 of Appeals resolved that issue.

 II. Standard of Review

¶6 “In federally subsidized housing cases, the court decides whether applicable

 rules and regulations have been followed, and whether termination of the lease is

 permissible.” E. Carolina Reg’l Hous. Auth. v. Lofton, 238 N.C. App. 42, 46 (2014)

 (quoting Charlotte Hous. Auth. v. Patterson, 120 N.C. App. 552, 555 (1995)), aff’d as

 modified, 369 N.C. 8 (2016). The construction of an administrative regulation is a

 question of law. United States v. Moriello, 980 F.3d 924, 930 (4th Cir. 2020). “On

 appeal, ‘[c]onclusions of law drawn by the trial court from its findings of fact are

 reviewable de novo.’ ” In re Estate of Skinner, 370 N.C. 126, 140 (2017) (alteration in

 original) (quoting In re Foreclosure of Bass, 366 N.C. 464, 467 (2013)); see also

 Moriello, 980 F.3d at 930.

 III. Analysis

¶7 At issue in this case is the construction of the term “specific grounds” in 24

 C.F.R. § 966.4(l)(3)(ii). Section 966.4 of Title 24 of the Code of Federal Regulations
 RALEIGH HOUS. AUTH. V WINSTON

 2021-NCSC-16

 Opinion of the Court

 states:

 § 966.4 Lease requirements.

 A lease shall be entered into between the PHA and
 each tenant of a dwelling unit which shall contain the
 provisions described hereinafter.

 ....

 (l) Termination of tenancy and eviction—

 ....

 (3) Lease termination notice.

 ....

 (ii) The notice of lease termination to the tenant
 shall state specific grounds for termination, and shall
 inform the tenant of the tenant’s right to make such reply
 as the tenant may wish. The notice shall also inform the
 tenant of the right (pursuant to § 966.4(m)) to examine
 PHA documents directly relevant to the termination or
 eviction. When the PHA is required to afford the tenant the
 opportunity for a grievance hearing, the notice shall also
 inform the tenant of the tenant’s right to request a hearing
 in accordance with the PHA’s grievance procedure.

 24 C.F.R. § 966.4.

¶8 “In resolving issues of statutory construction, we look first to the language of

 the statute itself.” Walker v. Bd. of Trs. of the N.C. Loc. Gov’tal Emps.’ Ret. Sys., 348

 N.C. 63, 65 (1998) (quoting Hieb v. Lowery, 344 N.C. 403, 409 (1996)); see also

 Radford, 734 F.3d at 293 (citing Chase Bank USA, N.A. v. McCoy, 562 U.S. 195, 204

 (2011)). When the term in the statute is unambiguous, the term “should be
 RALEIGH HOUS. AUTH. V WINSTON

 2021-NCSC-16

 Opinion of the Court

 understood in accordance with its plain meaning.” Fid. Bank v. N.C. Dep’t of Revenue,

 370 N.C. 10, 20 (2017); see also Moriello, 980 F.3d at 934 (“If the language of the

 regulation ‘has a plain and ordinary meaning, courts need look no further and should

 apply the regulation as it is written.’ ” (quoting Gilbert v. Residential Funding LLC,

 678 F.3d 271, 276 (4th Cir. 2012)). To determine the plain meaning, this Court has

 looked to dictionaries as a guide. Midrex Techs., Inc. v. N.C. Dep’t of Revenue, 369

 N.C. 250, 258 (2016).

¶9 In 24 C.F.R. § 966.4(l)(3)(ii), the adjective “specific” modifies the noun

 “grounds.” “Grounds” is defined as “factors forming a basis for action or the

 justification for a belief.” Grounds, New Oxford American Dictionary (3rd ed. 2010);

 see also Ground, Merriam-Webster’s Collegiate Dictionary (11th ed. 2007) (defining

 “ground” as “a basis for belief, action, or argument”); Ground, Black’s Law Dictionary

 (11th ed. 2019) (defining “ground” as “[t]he reason or point that something (as a legal

 claim or argument) relies on for validity”). Meanwhile, “specific” is defined as “clearly

 defined or identified.” Specific, New Oxford American Dictionary (3rd ed. 2010); see

 also Specific, Merriam-Webster’s Collegiate Dictionary (11th ed. 2007) (defining

 “specific” as “free from ambiguity”).

¶ 10 The plain meaning of “specific grounds” therefore requires RHA to clearly

 identify the factors forming the basis for termination of the lease. Applying the

 unambiguous plain meaning of “specific grounds” leads us to conclude that RHA
 RALEIGH HOUS. AUTH. V WINSTON

 2021-NCSC-16

 Opinion of the Court

 failed to comply with 24 C.F.R. § 966.4(l)(3)(ii).

¶ 11 The relevant portion of the notice of termination states:

¶ 12 As evidenced above, the notice of termination identifies provision 9(F) of the

 lease agreement, providing the contractual basis for termination of the lease.

 However, the notice of termination lacks any reference to specific conduct by Winston.

 RHA contends the “language [in the notice of termination] put . . . Winston on notice

 that her alleged lease violation was based on disturbing her neighbors.” Yet, a

 tenant’s disturbance of her neighbors encompasses a broad range of conduct, may

 involve the tenant or other persons on the premises, and, as relevant to this case,

 may include conduct for which the landlord may not evict the tenant as a matter of

 law. Specifically, as part of the Violence Against Women Act, ch. 322, 108 Stat. 1902

 (1994), Congress has prohibited covered housing programs from terminating

 participation in or evicting a tenant from housing “on the basis that the . . . tenant is

 or has been a victim of domestic violence, dating violence, sexual assault, or stalking,”

 34 U.S.C. § 12491(b)(1), and mandates that

 [a]n incident of actual or threatened domestic violence,
 RALEIGH HOUS. AUTH. V WINSTON

 2021-NCSC-16

 Opinion of the Court

 dating violence, sexual assault, or stalking shall not be
 construed as—

 (A) a serious or repeated violation of a lease for
 housing assisted under a covered housing program by the
 victim or threatened victim of such incident; or

 (B) good cause for terminating the assistance,
 tenancy, or occupancy rights to housing assisted under a
 covered housing program of the victim or threatened victim
 of such incident.

 34 U.S.C. § 12491(b)(2); see also N.C.G.S. § 42-42.2 (2019) (prohibiting termination of

 tenancy or “retaliat[ion] in the rental of a dwelling based substantially on: (i) the

 tenant, applicant, or a household member’s status as a victim of domestic violence,

 sexual assault, or stalking”). The additional statement in the notice of termination—

 “Inappropriate Conduct – Multiple Complaints”—is similarly broad and vague and

 subject to the same concerns as provision 9(F) of the lease agreement.

¶ 13 As a whole, the notice of termination is indeterminate. Winston cannot

 determine from the notice of termination how RHA contends she breached provision

 9(F) of the lease agreement, and none of the trial court’s factual findings support a

 conclusion otherwise. In the notice of termination, RHA failed to clearly identify the

 factors forming the basis for termination of the lease—the specific grounds for

 termination. Winston lacked adequate notice of the basis for the termination of lease.

 IV. Conclusion

¶ 14 We reverse the decision of the Court of Appeals. In this case, the identification

 and quotation of the specific provision serving as the basis for the landlord’s lease
 RALEIGH HOUS. AUTH. V WINSTON

 2021-NCSC-16

 Opinion of the Court

termination does not comply with 24 C.F.R. § 966.4(l)(3)(ii) because the factors

forming the basis for termination of the lease cannot be discerned. While a quotation

of the violated lease provisions in certain factual circumstances may provide “specific

grounds for termination,” cf. Roanoke Chowan Reg’l Hous. Auth. v. Vaughan, 81 N.C.

App. 354, 358 (1986) (holding that the notice of termination provided the specific

grounds for termination even though it incorrectly cited Section 7 of the lease

agreement because the statement—“by allowing individuals not named on the lease

to reside in your apartment”—“put defendants on notice regarding the specific lease

provision deemed to have been violated”), this issue and such a notice is not before

us. We hold that on this record, the notice of termination was fatally deficient.

Accordingly, we reverse the Court of Appeals’ decision concerning compliance with 24

C.F.R. § 966.4(l)(3)(ii) and remand to the Court of Appeals for remand to the trial

court for dismissal consistent with this opinion.

 REVERSED AND REMANDED.